406　　　　　　　July 8, 2026　　　　　　No. 651

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

H. F.,
*Petitioner-Respondent,*

*v.*

KEITH WOODS,
*Respondent-Appellant.*

Columbia County Circuit Court
25SK02946; A188828

Nickolas Brajcich, Judge.

Argued and submitted June 2, 2026.

Andy Simrin argued the cause for appellant. Also on the brief was Andy Simrin PC.

No appearance for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Respondent appeals a general judgment entering against him a stalking protective order (SPO) pursuant to ORS 30.866(1). Respondent argues in two assignments of error first that the court erred in finding there were two or more contacts that satisfied the requirements of ORS 30.866(1), and second that the court erred by issuing a permanent stalking protective order.[1] Because we conclude that the evidence was legally sufficient to support entry of an SPO, we affirm.

To obtain an SPO against a respondent, the petitioner must prove by a preponderance of the evidence:

  (1)   The respondent made two or more unwanted contacts with the petitioner or a member of the petitioner's immediate family or household within the past two years;

  (2)   Each contact gave rise to subjective alarm that was objectively reasonable; and

  (3)   The contacts taken together have given rise to subjective apprehension regarding the personal safety of the petitioner or their immediate family or household member that is objectively reasonable.

*See C. J. R. v. Fleming*, 265 Or App 342, 348, 336 P3d 534 (2014) (so stating); ORS 30.866(1).

Absent *de novo* review, which respondent does not request, we "review the trial court's factual findings for any supporting evidence and its legal conclusions for legal error." *A. Z. v. Lange*, 336 Or App 652, 653, 562 P3d 647 (2024) (internal quotation marks omitted). "[W]e view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021).

"A 'contact' can include almost any interaction with [a person] and can be categorized as either nonexpressive (physical or visual) contacts or expressive (spoken or written) contacts." *State v. Hejazi*, 323 Or App 752, 759, 524

---

[1] Petitioner does not appear on appeal and does not file an Answering Brief.

P3d 534 (2023). Although each contact must give rise to alarm, the contacts should be viewed in context "in order to determine whether they give rise to objectively reasonable alarm." *D. W. C. v. Carter*, 261 Or App 133, 141, 323 P3d 348 (2014) (citing *Weatherly v. Wilkie*, 169 Or App 257, 263, 8 P3d 251 (2000)). The contact and its effect are considered in the context of the parties' history. *See Pinkham v. Brubaker*, 178 Or App 360, 372-73, 37 P3d 186 (2001) (concluding that the petitioner's alarm was objectively reasonable when considered in the context of the parties' entire history).

On appeal, respondent argues that the contacts he had with petitioner failed to satisfy the requirements of ORS 30.866(1). We disagree. Petitioner and respondent had a variety of contacts because they were neighbors in a rural area of Oregon. From the beginning, their families did not get along and neither family wanted to have interactions with the other. Prior to the two-year period established by ORS 30.866(6), respondent threatened the wife of petitioner's cousin, running toward her with a chainsaw. The wife of petitioner's cousin, who lived within two blocks of petitioner, communicated this incident to petitioner.

Respondent concedes that there was one qualifying contact. The trial court was permitted to find that respondent recklessly disregarded the risk that swerving his vehicle toward petitioner would cause her objectively reasonable harm. *See B. R. B. v. Sweeney*, 336 Or App 203, 205, 561 P3d 173 (2024) (finding that the respondent's apparent attempt to run over the petitioner should allow a trier of fact to find that the respondent "acted recklessly in disregarding the risk that his actions were unwanted"). However, respondent contends that other contacts were not sufficient, and accordingly that the trial court erred by stating there were "two or more" contacts sufficient to justify the SPO.

The first contact the court relied on within the statutory time period that respondent contends is the incident involving the piece of petitioner's mail. Petitioner found a handwritten note on a piece of mail postmarked July 2025 that stated, "slow down, speed is not your friend." The piece of mail had tire marks on it, which petitioner testified, indicated to petitioner that respondent "ran over my piece of

mail that he took out of my mailbox, wrote the note, drove over it, and put it back in my mailbox." Petitioner stated that respondent admitted to her that he drove over the envelope and wrote on it. Respondent argues that the message written on the note did not convey a threat that rose to the standard required by *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999) ("a proscribable threat is a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts."). In the context of the parties' volatile relationship, the conduct illustrates respondent's willingness to disregard boundaries. Accordingly, the trial court permissibly regarded the physical act of tampering with petitioner's mail in a way that could damage it as a contact under ORS 30.866(1).

Petitioner also testified that respondent dug holes and trenches and placed "boulders" and rocks in a shared public access road. Petitioner testified that, other than petitioner's family and respondent, the only other party who might use this road is "somebody looking at the property that is for sale just right below us." The court stated that "[t]he piles of dirt and rocks and stuff in the driveway * * * may also qualify as a contact given it doesn't seem that there's any reason to do that other than to harass [petitioner]." Although the court did not rely on the respondent placing boulders in the road in its ultimate conclusion, that conduct could cause reasonable apprehension of serious injury if petitioner drove fast on the road or lighting conditions were poor.

Given the context and history of the parties' relationship, including multiple contacts during the two years prior to the issuance of the permanent stalking order, it was appropriate for the trial court to grant a permanent SPO. Swerving respondent's car toward petitioner, placing physical obstructions in petitioner's part of the road, and tampering with and damaging her mail was evidence of two or more contacts. Considering them together, as well as respondent's intentional violation of the temporary stalking order, they could reasonably cause petitioner to fear for her safety. We affirm.

Affirmed.